IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER CONROY,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   20-cv-3837 |
| | : | |
| **KILOLO KIJAKAZI,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                       **March 21, 2022**

Plaintiff, Jennifer Conroy, filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Supplemental Security Income (SSI) under Title II of the Social Security Act. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's request for review is **DENIED**.

### I.      PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on November 7, 2016, alleging disability beginning January 1, 2004. (R. 12). Plaintiff initially alleged that she was disabled due to bipolar disorder, manic depression, anxiety, and an undiagnosed hearth condition. (R. 196). Plaintiff's application was denied on June 14, 2017, and she requested a hearing before an Administrative Law Judge (ALJ). (R. 12). The administrative hearing occurred on January 7,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for Andrew Saul as the Defendant in this case.

2019.  (R. 12, 28–71).  Plaintiff, represented by counsel, appeared and testified at the hearing, as did an impartial vocational expert (VE).  *Id.*  On May 1, 2019, the ALJ issued a decision denying benefits under the Act.  (R. 9–27).  Plaintiff requested review of the decision, and the Appeals Council denied her request on June 2, 2020, making the ALJ's decision the final decision of the Commissioner.  (R. 1–6).

Plaintiff filed a Complaint in this Court on August 6, 2020.  (Compl., ECF No. 1).  On July 31, 2021, Plaintiff filed a Motion for Summary Judgment.  (Pl.'s Br., ECF No. 16).  On August 27, 2021, the Commissioner filed its Response.  (Resp., ECF No. 17).  Plaintiff did not file a reply.

## II.   FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to the instant request for review.[2]

Plaintiff was born on July 7, 1972, making her forty-four years old on the date her application was filed.  (R. 21).  Plaintiff has at least a high school education and has past relevant work as a telephone operator and sales representative.  *Id.*

### A.   Medical Evidence

Plaintiff's psychological problems began in 2004.  (R. 12).  She was hospitalized several times, with one such instance causing her to lose custody of her children.  (R. 37–38, 44–45).  Plaintiff testified at the administrative hearing that she was last hospitalized in 2012.  (R. 45).

---

[2] The ALJ found Plaintiff to have the severe impairments of bipolar disorder, PTSD, degenerative disc disease of the cervical spine, and asthma.  However, Plaintiff only challenges the ALJ's findings regarding her mental impairments.  Therefore, this Court will summarize only the medical evidence relevant to Plaintiff's bipolar disorder and PTSD.

2

Because Plaintiff applied for SSI benefits, the alleged disability period began on November 7, 2016, the date she filed her application. *See* 20 C.F.R. § 416.501 (SSI benefits may not be paid for "any period that precedes the first month following the date on which an application is filed").

### 1. Treating Psychiatrist Dr. Nelson

Plaintiff began treatment with Dr. B. Kenneth Nelson for her mental health impairments in 2011 and continued treating with him throughout the relevant period. (R. 292–300, 309–18). Dr. Nelson prescribed Plaintiff's medications and sometimes conducted psychotherapy sessions with her. (R. 45–46). Plaintiff testified that she met with Dr. Nelson once a month in order to receive a prescription for her medications, and only engaged in psychotherapy with him once or twice a year; indeed, the medical record documents only three such visits during the relevant period. (R. 45–46, 54, 56–57, 296–97, 317). During a visit on April 10, 2017, Plaintiff reported extreme mood swings and being unable to hold a job. (R. 296). In May of 2018, Dr. Nelson found Plaintiff's mood to be stable and without swings. (R. 297). Finally, on July 19, 2018, Dr. Nelson listed Plaintiff's medications and noted that Plaintiff reported Adderall was helping her maintain better concentration and complete tasks. (R. 317). Dr. Nelson did not conduct any mental status examinations during these visits.

On December 11, 2018, Dr. Nelson completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R. 319–21). Dr. Nelson found that Plaintiff had no limitations in understanding or remembering simple instructions, carrying out simple instructions, or making judgments on simple work-related decisions, and that she had marked limitations in understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. (R. 319). Dr. Nelson

also found that Plaintiff had mild limitations in interacting appropriately with the public, moderate limitations in interacting with supervisors and co-workers, and marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. (R. 320). Dr. Nelson did not identify any factors that supported his assessment. (R. 319–20). Dr. Nelson found Plaintiff capable of managing benefits to her own best interest. (R. 321).

### 2. Consultative Examiner Dr. Marged Lindner

On May 30, 2017, Dr. Marged Lindner conducted a Mental Status Evaluation of Plaintiff. (R. 301–05). On examination, Plaintiff presented as cooperative, although she spoke rapidly and volunteered information in a somewhat disorganized manner and did not always answer the question that she was asked due to failure to pay close attention. (R. 303). Plaintiff was very carefully dressed and groomed, her posture was a little tense, and her eye contact was appropriate. *Id.* She displayed restless motor behavior by rocking and jiggling her leg. *Id.* Plaintiff's speech was fluent, her voice was clear, and her language was adequate, though Dr. Lindner noted her speech as pressured. *Id.* Her thought processes displayed no evidence of hallucinations, delusions, or paranoia, and her affect was full in range. (R. 303–04). Plaintiff's mood appeared anxious and a bit irritable. (R. 304). Her attention and concentration and her recent and remote memory skills were mildly impaired by anxiety. *Id.* Dr. Lindner found Plaintiff's cognitive functioning likely to be in the below average range, but her insight and judgment were fair. *Id.* Regarding activities of daily living, Dr. Lindner noted that Plaintiff dressed, bathed, and groomed herself if she was going to see people; prepared microwave food for herself; did occasional cleaning, including doing her own laundry; went shopping with her father; made phone calls to her family and used social media; and spent most of her time watching TV. *Id.* Dr. Lindner diagnosed Plaintiff with bipolar disorder and PTSD, and stated

that her prognosis was "[g]uarded, given the claimant's history of limited independent function." (R. 305). She also found that Plaintiff would "need assistance in managing funds due to disorganization." *Id.*

Dr. Lindner also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R. 306–08). She found Plaintiff had moderate limitations in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions, and marked limitations in understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. (R. 306). Dr. Lindner also found Plaintiff had moderate limitations in interacting appropriately with the public, supervisors, and co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (R. 307).

### 3. State Agency Reviewing Psychologist Dr. Soraya Amanullah

On June 8, 2017, state agency psychologist Dr. Soraya Amanullah reviewed the medical record and conducted a Mental Residual Functional Capacity Assessment. (R. 75–77, 80–81). Dr. Amanullah found Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, and make simple work-related decisions. (R. 80). She found Plaintiff moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Amanullah found Plaintiff not significantly limited in her ability to ask simple

questions or request assistance, to get along with coworkers or peers without distracting them, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and moderately limited in her ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. (R. 81). Dr. Amanullah added that Plaintiff's ADLs were generally functional from a mental standpoint, and found that despite the limitations from her psychological impairment, Plaintiff was able to perform routine, repetitive tasks. *Id.*

### 4. Consultative Examiner Dr. Avi Nires

On February 8, 2019, Dr. Avi Nires conducted a Mental Status Evaluation of Plaintiff. (R. 327–31). On examination, Plaintiff was cooperative, but occasionally evasive, particularly when talking about her drug and alcohol history. (R. 329). Her manner of relating, social skills, and overall presentation were fair. *Id.* Her mode of dress was appropriate, and she was well groomed. *Id.* Dr. Nires also noted her motor behavior as normal, and her eye contact was appropriate. *Id.* Plaintiff's thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. (R. 330). Her affect was depressed and tearful, and her mood was dysthymic. *Id.* Dr. Nires found Plaintiff's attention and concentration and recent and remote memory skills to be impaired, likely due to anxiety or nervousness in the evaluation as well as emotional distress secondary to her depression. *Id.* He estimated her intellectual functioning to be in the average range, and her insight and judgment were fair. *Id.* Regarding Plaintiff's activities of daily living, Plaintiff reported that she could dress, bathe, and groom herself, cook and prepare food, clean and do laundry, shop, manage money, and drive a car, although she stated that sometimes her children's father would cook for her. (R. 331). She also stated that she did not like to be around others, and therefore her friend would sometimes shop

for her. *Id.* Plaintiff reported that she could not take public transportation independently, had no friends with whom she socialized, and had no hobbies or interests aside from watching TV. *Id.* Dr. Nires diagnosed Plaintiff with unspecified bipolar disorder, PTSD, and bereavement. *Id.* His prognosis was "fair to guarded, given the severity of her symptoms despite treatment," and he found that Plaintiff would be able to manage her own funds. *Id.*

Dr. Nires also completed a Medical Statement of Ability to Do Work-Related Activities (Mental). (R. 332–34). He found Plaintiff to have mild limitations in her ability to understand and remember simple instructions, carry out simple instructions, and make judgment on simple work-related decisions, and moderate limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (R. 332). Dr. Nires identified Plaintiff's impairments in attention, concentration, and memory as the basis for these findings. *Id.* He also found Plaintiff to have moderate limitations in interacting appropriately with supervisors and co-workers and responding appropriately to usual work situations and to changes in a routine work setting, and marked limitations in interacting appropriately with the public. (R. 333). Dr. Nires identified Plaintiff's PTSD, bereavement, and unspecified bipolar disorder as the basis for these findings. *Id.*

**B.     Non-Medical Evidence**

The record also contains non-medical evidence. On February 28, 2017, Plaintiff completed an Adult Function Report in which she asserted disability due to bipolar disorder, anxiety, ADHD, degenerative disc disease, nerve damage in her arms, and arthritis in her back and knees. (R. 206). She reported that her bipolar disorder causes her to have manic and depressive episodes that make her feel like she does not know what kind of person she will be

from one day to the next. *Id.* She reported her anxiety stops her from leaving the house, and that her ADHD makes her unable to focus, concentrate, or complete tasks. *Id.* Regarding her daily activities, Plaintiff stated that when her children are with her she tries to cook for them and help them with their homework, but also stated that she spends a lot of time on the couch when she is in a depressive state. (R. 207). She stated that she does not take care of her hygiene when she is in a depressive state, and sometimes forgets to eat. *Id.* When she does remember to eat, she prepares her own meals, although she stated that she has lost her interest in cooking due to her condition. (R. 208). Plaintiff reported that she is unable to concentrate on household chores and needs help from her family to clean. *Id.* She stated that she goes outside about two times per week accompanied by a family member, drives on occasion, and shops a few times per month. (R. 209). She also stated that she is unable to handle money and cannot remember to pay bills. *Id.* Regarding her functional abilities, Plaintiff reported that her anxiety, bipolar, and ADHD affect her ability to concentrate, follow instructions, and remember and complete tasks, and that her disc disease and arthritis affect her ability to lift, bend, squat, kneel, and walk. (R. 211).

Plaintiff also testified at the administrative hearing. At the hearing, Plaintiff testified that she lives with her four children and their father, and that her father and a family friend also help support her. (R. 38–39). She stated that she helps her kids get ready for school, and that she prepares meals for them when they return, although doing so can give her panic attacks. (R. 41). While the children are at school, Plaintiff stated that she does laundry or cleans the house, but sometimes needs breaks. (R. 41–42). She also stated that she prepared her own meals and cleaned when she was living on her own. (R. 42). Regarding her bipolar disorder, Plaintiff reported having manic episodes several times a month, lasting for a few days at a time. (R. 42–43). After a manic episode, she reported going through depressive periods lasting for weeks at a

time, during which she spent most of her time in bed. (R. 43). During her manic episodes, Plaintiff stated that she doesn't sleep much and starts doing chores but doesn't finish them. (R. 43–44). She testified that she had been hospitalized in the past for mental health treatment, but that during the alleged disability period she was not in any intensive outpatient programs and only saw her psychiatrist Dr. Nelson once a month. (R. 45). Plaintiff clarified that Dr. Nelson only prescribed her medication and sometimes met with her, but that she was not engaging in regular therapy because she did not find it helpful. (R. 53–54). Regarding work, Plaintiff testified that she would need to take a break any time she experienced anxiety or panic attacks, which occur daily. (R. 61). She stated that she lost both of her previous jobs because she missed too much time due to her anxiety and panic attacks. (R. 49–50). She testified that her panic attacks and anxiety make her drowsy and cause her to feel irritable. (R. 62).

## III.   LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a

> listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of establishing steps one through four, and then the burden shifts to the Commissioner at step five to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience and residual functional capacity.[3] *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

### IV. ALJ'S DECISION

In her decision, the ALJ used the five-step sequential analysis and made the following

---

[3] Residual functional capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by [his impairments]." 20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

findings:

1. The claimant has not engaged in substantial gainful activity since November 7, 2016, the application date.

2. The claimant has the following severe impairments: Bipolar Disorder, Post-Traumatic Stress Disorder (PTSD), Degenerative Disc Disease (DDD) of the cervical spine, and asthma.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant should avoid concentrated exposure to temperature extremes, wetness, and pulmonary irritants (e.g., dust, odors, gases, fumes, etc.). In addition, the claimant is limited to unskilled work with no public interaction and only occasional interaction with co-workers and supervisors.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on July 7, 1972 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable

> job skills.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since November 7, 2016, the date the application was filed.

(R. 14–22).

Accordingly, the ALJ determined Plaintiff was not disabled. (R. 23).

## V.   DISCUSSION

In her Motion for Summary Judgment, Plaintiff claims that the ALJ erred by: (1) improperly evaluating the medical opinion of Plaintiff's treating physician Dr. Nelson; (2) improperly evaluating Plaintiff's subjective statements concerning her impairments; and (3) failing to follow the vocational expert's (VE) testimony that a person who would be off-task or miss work would not be able to maintain substantial gainful activity. (Pl.'s Br., ECF No. 16, at 6–12). In response, the Commissioner argues that the ALJ properly evaluated the medical opinions and Plaintiff's subjective statements, and that the ALJ was permitted to disregard the VE's testimony about more significant limitations because she did not find Plaintiff to be limited to that extent. (Resp., ECF No. 17). I agree with the Commissioner.

### A.   Medical Opinion Evidence

Plaintiff first claims that the ALJ improperly evaluated the medical opinions during her RFC analysis. Specifically, she argues that the ALJ erred by affording Plaintiff's treating psychiatrist Dr. Nelson only "some weight." (R. 20). She also argues that the ALJ gave much

more weight that was warranted to the opinions of the two consultative examiners. (Pl.'s Br., ECF No. 16, at 7).

Because Plaintiff filed her application for benefits before March 27, 2017,[4] medical opinions are assessed according to 20 C.F.R. § 404.1527. Treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. *See, e.g.*, *See Fargnoli v. Massanari*, 247 F. 3d 34, 43 (3d Cir. 2001). "While '[t]reating physicians' reports should be accorded great weight, the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *See Colvin v. Comm'r Soc. Sec.*, No. 16-2213, 2017 WL 203372, at *2 (3d Cir. Jan. 18, 2017) (citations omitted). Instead, the ALJ may assign a treating physician's opinion more or less weight depending upon the extent to which the physician's assessment is supported by the record. *Plummer*, 186 F.3d at 431. The ALJ may also give more or less weight to a treating physician's opinion based on: (1) the length of the treatment relationship and frequency of examination; (2) nature and extent of examination; (3) the supporting explanations provided for the opinion; (4) the consistency of the opinion with the records as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 416.927(c)(1)-(6).

Here, the ALJ assigned Dr. Nelson's opinion "some weight," stating:

> While the undersigned concurs with [Dr. Nelson's] assessed limitation with respect to interaction with supervisors and co-workers, as well as issues addressing complex tasks, the assessment appears to be overly restrictive with respect to the claimant's ability to respond appropriately to usual work situations and to changes in a routine work setting. Of particular note is the claimant's self-reported improvement with relatively sporadic treatment.

---

[4] The regulations providing for the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. § 404.1520c (prescribing rules for new decisions which apply to claims filed before, and after, March 27, 2017). The amended regulations are not applicable to this case.

(R. 20). Plaintiff argues that the ALJ mischaracterized Plaintiff's treatment as "sporadic," pointing to Plaintiff's medication records and a note from Dr. Nelson certifying that he prescribed medications for Plaintiff monthly since 2014. (R. 322). Plaintiff also argues that Dr. Nelson's opinion is supported by the record, which shows a history of abuse, extreme mood swings, anxiety, manic episodes, depression, pressured speech, difficulty with memory and concentration, and sleep difficulties, as well as Dr. Nelson's treatment notes observing mood swings, anxiety, and depression. (Pl.'s Br., ECF No. 16, at 9).

  I find that substantial evidence supports the ALJ's decision to afford Dr. Nelson's opinion some weight. Regarding whether Plaintiff's treatment with Dr. Nelson may be accurately categorized as "sporadic," the record supports that Plaintiff was regularly prescribed medication by Dr. Nelson, but she only occasionally engaged in psychotherapy sessions. This is evidenced by the fact that there are only three treatment notes from Dr. Nelson during the alleged disability period, as well as Plaintiff's testimony that she did not engage in regular therapy and liked Dr. Nelson because she did not have to attend therapy sessions with him. (R. 56). Additionally, Dr. Nelson did not conduct any mental status examinations during his treatment of Plaintiff, and took only sparse notes recording what Plaintiff reported to him about her mood and condition generally. (R. 296–97, 317). Overall, Dr. Nelson made very few findings regarding Plaintiff's impairments aside from checking the boxes on his medical source statement form, and did not identify any factors that supported his assessment. (R. 319–20). There are no records from any other mental health providers in the record, and while Plaintiff was hospitalized on several occasions before 2012, there is no evidence that she received any inpatient treatment during the alleged disability period. As the ALJ noted, Dr. Nelson's few treatment notes showed some improvement in Plaintiff's symptoms, reporting that her mood was stable and her

medications helped with her ability to concentrate and complete tasks. (R. 18, 297, 317). During the two consultative examinations, while Plaintiff showed slightly impaired concentration due to anxiety, she was also cooperative and well-groomed, maintained appropriate eye contact, and displayed coherent thought processes and fair insight and judgment. (R. 303–04, 329–30). Plaintiff reported that she was able to complete activities such as dressing, bathing, and grooming herself, cleaning and doing laundry, cooking simple meals for herself and her children, shopping, managing her money, and keeping in contact with her parents. (R. 304, 330–31). Finally, it should be noted that while the other physician opinions were consistent with Dr. Nelson's in most areas, none of them found Plaintiff to have marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 80–81, 307, 333). This supports the ALJ's finding that Dr. Nelson's opinion was overly restrictive with regards to Plaintiff's ability to respond to usual work situations and to changes in a routine work setting.

Substantial evidence also supports the ALJ's decision to afford the opinions of consultative examiners Dr. Lindner and Dr. Nires great weight. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act," and the opinions of non-examining sources can override the treating sources' opinions provided they are supported by substantial evidence in the record. *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011). However, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317.

Here, the ALJ afforded the opinions of consultative examiners Dr. Lindner and Dr. Nires great weight because "the record supports [them,]" specifically noting "the claimant's

improvement in symptomatology with relatively sporadic treatment." (R. 20). As previously discussed, the only records of Plaintiff's mental health treatment are those from Dr. Nelson, who conducted psychotherapy sessions with Plaintiff three times during the alleged disability period. Furthermore, on those three occasions, Dr. Nelson noted that Plaintiff's symptoms had somewhat improved, writing that her mood had stabilized and that she reported her medication helping with her concentration and ability to complete tasks. (R. 297, 317). Because of the limited evidence in the record, the ALJ's explanation, though brief, is sufficient to support her findings with regard to the consultative opinions. Furthermore, the ALJ properly accounted for all of the medical opinions in formulating her RFC by limiting Plaintiff to "unskilled work with no public interaction and only occasional interaction with co-workers and supervisors." (R. 16).

I find substantial evidence supports the ALJ's decision to afford Dr. Nelson's opinion some weight, and to afford Dr. Lindner and Dr. Nires' opinions great weight. Accordingly, Plaintiff's request for remand on this basis is denied.

  **B.**  **Subjective Complaints**

Next, Plaintiff argues that the ALJ erred in assessing her subjective statements concerning her impairments and their effect on her ability to work. (Pl.'s Br., ECF No. 16, at 10). Plaintiff argues that her testimony is supported by the medical evidence, and therefore the ALJ erred by discounting it. *Id.* at 11.

Social Security Regulations require a two-step evaluation of subjective symptoms: (1) a determination as to whether there is objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and (2) an evaluation of the intensity and persistence of the pain or symptoms and the extent to which it affects the individual's ability to work. 20 C.F.R. §404.1529(b). The ALJ is required to consider the

objective evidence of record, as well as the plaintiff's subjective testimony. *See* S.S.R. 16-3p, 2016 WL 1237954.  In evaluating the intensity, persistence, and limiting effects of a plaintiff's symptoms, the following factors should be considered by the ALJ: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medications for relief of symptoms; (6) any measures other than treatment used to relieve symptoms, and (7) any other factors.  20 C.F.R. § 404.1529(c).  When a claimant's testimony about her activities of daily living is inconsistent with the available evidence, the ALJ is justified in finding the claimant to be less than fully credible.  *See Burns v. Barnhart,* 312 F.3d 113, 129-30 (3d Cir. 2002).

Here, the ALJ evaluated Plaintiff's subjective complaints using the two-step process set forth in the regulations.  The ALJ found that Plaintiff's mental impairments could reasonably be expected to produce her symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 19).  The ALJ stated:

> [Claimant's statements] are inconsistent because the record simply does not support them.  The claimant's treatment during the relevant period has been routine and conservative, without frequent emergency department visits, crisis interventions, or psychiatric hospitalizations.  In fact, the claimant testified that she has not been hospitalized since 2012.  Further, the limited records show that with treatment, the claimant's condition has improved and indeed stabilized …  She is also able to maintain adequate relationships with her children, parents, and her children's father.  The claimant is also able to engage in a wide variety of daily activities, including care of her children, albeit with assistance from family members.  The undersigned acknowledges that the claimant has some problems with her physical and mental impairments.  However, the record in this matter supports the above-cited residual functional capacity.  Additional limitations are unsupported and unwarranted.

(R. 19).

Plaintiff argues that the ALJ improperly discounted her subjective complaints because she suffers from alternating manic and depressive episodes that caused her to miss work when she was employed, and because she suffers from frequent panic attacks. (Pl.'s Br., ECF No. 16, at 10–12). However, Plaintiff cannot cite to any evidence in the medical record besides her own subjective statements to support her assertion that these impairments are disabling. As the ALJ noted, the only non-opinion evidence in the record, the treatment notes from Dr. Nelson, show that Plaintiff's symptoms showed some improvement, with her mood becoming stable and her medication helping with her ability to concentrate and complete tasks. (R. 297, 317). The mental status evaluations conducted by consultative examiners Dr. Lindner and Dr. Nires showed that Plaintiff was cooperative and well-groomed, maintained appropriate eye contact, and displayed coherent thought processes and fair insight and judgment. (R. 303–04, 329–30). The record also shows that Plaintiff engaged in ADLs such as taking care of her children, keeping herself well-dressed and groomed, preparing simple meals, doing her own laundry, and shopping. (R. 57–58, 207, 304, 331). *See* 20 C.F.R. § 416.929(c)(3)(i) ("Factors relevant to your symptoms … which we will consider include: (i) Your daily activities").

Because of this, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. Accordingly, Plaintiff's request for remand on this ground is denied.

### C. Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ should have credited the VE's testimony that an individual who would be off-task for fifteen to twenty percent of the day would not be able to sustain employment, and that an individual who would miss one day of work per week would not be able to sustain employment. (Pl.'s Br., ECF No. 16, at 12). These hypothetical questions

were based on Plaintiff's subjective complaints that her mental impairments would cause her to be off-task and to miss work. However, the ALJ ultimately found Plaintiff's subjective complains to be inconsistent with the medical record. Because the ALJ did not find Plaintiff to be limited to the extent she would be off-task for fifteen to twenty percent of the day or would have to miss one day of work per week, she was not required to credit the VE's testimony regarding these specific scenarios. *See Seney v. Comm'r Soc. Sec.*, 585 F.App'x 805, 809 (3d Cir. 2014) (finding the ALJ did not need to credit VE's response that included allegations of disabling symptoms that were not credibly established).

Accordingly, Plaintiff's request for remand on this ground is denied.

## VI. CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's request for review is **DENIED**.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge